# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| **MARION T, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CAUSE NO. 1:07-CV-3 |
| | ) |
| | ) |
| **NORTHWEST METALS PROCESSORS,** | ) |
| **INC., et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on the motion of Defendant Troy Reed ("Reed") for partial summary judgment. (Docket # 53.) The Plaintiff, Marion T, LLC ("Marion"), filed a response on November 6, 2008 (Docket # 66), and Reed filed a reply on November 12, 2006 (Docket # 70). For the reasons provided in this Opinion and Order, the motion will be GRANTED.[1]

### II. FACTUAL AND PROCEDURAL BACKGROUND

This case began when Marion filed a four count complaint against the Defendants in connection with an agreement it entered into with Northwest Metals Processors, Inc. ("Northwest"), for the removal and salvaging of equipment and materials at Marion's facility located in Marion, Indiana. Another Defendant is Buckeye Industrial Sales & Service, Inc. ("Buckeye"), an entity that issued a check to Marion. Defendant Reed is the President of both Northwest and Buckeye.

---

[1] The Court has jurisdiction of this case based on diversity of citizenship. 28 U.S.C. § 1332. All parties have consented to the Magistrate Judge. 28 U.S.C. § 636(c).

What is before the Court now, however, concerns only Marion's check deception claims against Reed under Count II of its complaint, and they center on the allegation that he signed three checks payable to Marion, two drawn on Northwest's bank account at Sky Bank and one drawn on Buckeye's account there.[2] As it turns out, that bank returned all three checks for insufficient funds.[3]

Given the narrow scope of the issues before the Court, few details need to be recited. According to Marion, both Northwest and Buckeye became in arrears on the contract salvaging payments. Apparently this situation caused Reed, the sole shareholder, board member, and officer of both corporations, to issue a check for $40,000 on September 12, 2006 (Marion's Index of Exs. B), drawn on Northwest's account at Sky Bank and payable to Marion. This check was returned to Marion marked "NOT SUFFICIENT FUNDS," and when brought to Reed's attention, he apparently replaced the first check with a second one on October 24, 2006 (Marion's Index of Exs. D), for the same amount and again drawn on the corporate account. Like the first one, this check too was subsequently returned by Sky Bank marked, "NOT SUFFICIENT FUNDS." It seems that in each instance Reed knew that there were insufficient funds in the account to satisfy the amount of each check. (*See* Reed Dep. 101-04.)

Finally, on October 24, 2006, Reed drafted a third check payable to Marion drawn on Buckeye's account at Sky Bank in the amount of $15,829.53. (Marion's Index of Exs. F.) The record is a little less clear concerning whether Reed knew that Buckeye's account at Sky Bank

---

[2]Marion has clarified that it makes no claim against Reed under any other count of its complaint, and therefore, summary judgment will be granted in Reed's favor under Counts I, III and IV of Marion's complaint.

[3]Marion undoubtedly knew that Reed was the President of Northwest since their January 9, 1996, agreement shows that he signed it for Northwest as "President."

held insufficient funds to satisfy the amount of this check (*see* Reed Dep. 107), but in any event, that check was also returned to Marion stamped "NOT SUFFICIENT FUNDS."

All three checks were pre-printed Sky Bank checks showing in the upper left corner the name of the corporation account holder (*i.e.*, either Northwest or Buckeye), and each listed the respective corporation's account number. Reed was authorized to sign checks, of course, for both Northwest and Buckeye, and each check was signed simply "Troy Reed," without any notation or indication of his agency status.

On November 17, 2006, Marion by counsel served notice of the dishonored checks on the statutory agent for both Northwest and Buckeye and demanded payment. (Marion's Index of Exs. I, J.) Notice was not sent to Reed personally.[4]

Given these undisputed facts, Reed argues that as a matter of law he cannot be held personally liable for the dishonored checks under Indiana's version of the Uniform Commercial Code, Ind. Code § 26-1-3.1-402(c), because he is the President of both Northwest and Buckeye and signed the checks in that representative capacity. Marion contends, however, that recovery is authorized under Indiana common law because "where a tortious act is committed by the agent of a principal, the agent and principal are equally liable." (Marion Resp. Br. 6 (citing *Indiana Law Encyclopedia -- Agency* § 57).) In reply, Reed does not challenge Marion's legal recitation, but maintains that because this is a commercial dispute over negotiable instruments, the principles Marion cites do not apply, and in fact must yield to Indiana Code § 26-1-3.1-402(c).

---

[4]Marion asserts in its Statement of Genuine Issues ¶ 12 that it provided notice to "the maker of the dishonored checks," and although that statement is a little unclear concerning to whom it is referring, the subsequent citation to Marion's exhibits I and J establish that they really mean Northwest's and Buckeye's statutory agent.

## III. STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne*, 337 F.3d at 770. The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

## IV. DISCUSSION

At the outset, it is undisputed that Marion's claims against Reed are based on three separate negotiable instruments (*i.e.*, corporate checks), and thus it follows that Indiana's version of the U.C.C., Indiana Code § 26-1-3-101 *et seq.*, applies. *Yin v. Soc'y Nat'l Bank Indiana*, 665 N.E. 2d 58, 62 (Ind. Ct. App. 1996), *trans. denied*, 683 N.E.2d 581 (Ind. 1997). Consequently,

Marion's reliance on Indiana common law principles must yield to the Code if applicable.

This brings the Court to what is essentially the central issue in the case: whether Reed can be held personally liable for the check deception claim Marion asserts in its complaint, under Indiana Code § 35-43-5-5,[5] in light of the language that now exists in Indiana Code § 26-1-3.1-402(c). Indiana Code § 26-1-3.1-402(c) provides:

> If a representative [*i.e.*, Reed] signs the name of the representative as drawer of a check without indication of the representative status and the check is payable from an account of the represented person who is identified on the check [*i.e.*, Northwest or Buckeye], the signer is not liable on the check if the signature is an authorized signature of the represented person.

Unfortunately for Marion, Indiana has already expressed a position on the question. *Braden Corp. v. Citizens National Bank of Evansville*, 661 N.E.2d 838, 841 (Ind. Ct. App. 1996), involves the alleged civil liability of a corporate officer for check deception arising out of his signing a corporate check later dishonored for insufficient funds. The Indiana Court of Appeals noted that liability attached based on the *then*-current version of the U.C.C., and then went on to explain that under the "new [and present] version of Article 3, specifically Ind. code § 26-1-3.1-402(c), [the officer] would not be personally liable on the check . . . [.]" *Braden Corp.*, 661 N.E.2d at 841 n.3. This view is consistent with the intent of the drafters, who amended the statute in 1993 so that it applied to check cases and explained that if subsection (c) applies, then "nobody is deceived into thinking that the person signing the check is meant to be liable." Ind. Code § 26-1-3.1-402 cmt. 3.

Applying the statute here, it is undisputed that Reed signed his name to each of the corporate checks on the Sky Bank accounts as the authorized signatory, but without indicating

---

[5] Marion did not cite the statute specifically in its complaint, but the complaint does track the language of the statute in Count II.

his representative status. Consequently, in the language of Indiana Code § 26-1-3.1-402(c), he is "not liable on the check[s]." The outcome reached under this analysis follows both *Braden* and the majority rule. *See, e.g.*, *Packaging Materials & Supply Co., Inc. v. Prater,* 882 So. 2d 861 (Ala. Civ. App. 2003)*; Peterson v. Holtrachem, Inc*., 521 S.E.2d 648 (Ga. App. 1999); *Medina v. Wyche*, 796 So. 2d 622 (Fla. Dist. Ct. App. 2001); *cf. Korhumel Steel Corp. v. Wandler*, 600 N.W.2d 592 (Wis. Ct. App. 1999).

Of course, as Marion notes, Reed is the subject of a criminal proceeding in the state of Indiana for check deception under Indiana Code § 35-43-5-5, a Class A Misdemeanor, arising out of this incident. The difference between the criminal proceedings and the case here, however, is that in the civil context, agency principles govern and the drafters of the U.C.C. chose to incorporate them into Indiana Code § 26-1-3.1-402(c), favoring the agent in printed check cases. In the criminal realm, however, agency principles cannot be applied as a shield; thus, a corporate officer who issues a worthless check in the corporate name may be held personally liable under a criminal check deception statute. The reasoning can be succinctly stated:

> There is no language in the [check deception] statute which exempts from its operation a person who shall obtain money or property with fraudulent intent by means of a check which he draws or makes in a representative capacity. If he draws the check as the representative or officer of a corporation, he is none the less the maker or drawer within the contemplation of this statute, and the fraud which the statute is designed to prevent is personal to him. There is no doctrine of agency in the criminal law which will permit an officer of a corporation to shield himself from criminal responsibility for his own act on the ground that it was the act of the corporation and not his personal act.

*Walker v. State*, 467 N.E.2d 1248, 1250-51 (Ind. Ct. App. 1984) (quoting *Cooper v. State*, 391 N.E.2d 841, 844-45 (Ind. Ct. App. 1979) (internal quotation marks omitted)).

Therefore, while there is no doctrine of agency in criminal law that can shield Reed if he, with fraudulent intent, was the drafter of a check that was later dishonored, the drafters of the U.C.C. have chosen not to expose agents to civil liability involving transactions where the obvious intent (such as in printed check cases) was to have the check bind the company, even if an authorized agent signs his own name. 2 White & Summers, *Uniform Commercial Code* § 16-5 (5th ed. 2008).

## V.  CONCLUSION

Accordingly, Troy Reed's motion for summary judgment (Docket # 53) is hereby GRANTED, and Marion shall take nothing from Reed on its complaint.

SO ORDERED.

Enter for November 24, 2008.

S/Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge
